Alan G. Tippie (CA Bar No. 89587)
  alan.tippie@gmlaw.com
Asa S. Hami (CA Bar No. 210728)
  asa.hami@gmlaw.com
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Plaintiff, Daniel Kang,
Trustee of the Kang Living Trust

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL KANG, Trustee of the Kang Living Trust, <br><br> Plaintiff, <br><br> vs. <br><br> ALEXANDER KANG, aka ALEX KANG, an individual; INFINITE PROSPECTS ENTERTAINMENT LLC, aka INFINITE PROSPECTS ENTERTAINMENT HOLDINGS, LLC, a Nevada limited liability company; IPE CONVENTION LLC, a Nevada limited liability company; INFINITE PROSPECTS ENTERTAINMENT INC., a Delaware corporation, aka INFINITE PROSPECTS ENTERTAINMENT, LLC, and aka INFINITE PROSPECTS ENTERTAINMENT HOLDINGS, LLC, <br><br> Defendants. | Case No. <br><br> **COMPLAINT TO ENFORCE PROMISSORY NOTES AND GUARANTY; COMMON COUNTS; FRAUD AND ALTER EGO; DECLARATORY RELIEF** |

DANIEL KANG ("D. Kang"), as Trustee of the Kang Living Trust ("Plaintiff"), by and through undersigned counsel, alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1) as the matter in controversy alleged herein exceeds $75,000 and is between citizens of different states.

AGT 64968282v5

2.    Venue is proper in this Court under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims referenced herein occurred in Los Angeles County, California, and because Defendants either directly or through an alter ego specifically consented to the exclusive jurisdiction of the state and federal Courts in Los Angeles County, California.

## INTRODUCTION

3.    This is an action to recover damages for monies advanced to or on behalf of defendants, for breach of promissory notes held by the Kang Living Trust, for breach of a written guaranty, for successor liability, for fraud committed by defendants in connection with such advances, and for declaratory relief.

## THE PARTIES

4.    The Kang Living Trust (the "Trust") is a revocable trust with a principal address of 145 Columbine Avenue, Santa Ana, CA 92707.  The Trustee of the Trust is D. Kang who is authorized and empowered to independently act on behalf of and brings this action on behalf of the Trust.

5.    Plaintiff is informed and believes, and therefore alleges Defendant Alexander Kang, aka Alex Kang ("A. Kang"), is an individual resident of the State of Nevada with an address of 8813 Bonta Court, Las Vegas, NV 89134.

6.    Defendant Infinite Prospects Entertainment LLC, aka Infinite Prospects Entertainment Holdings, LLC ("IPE, LLC"), is or was a Nevada limited liability company formed on December 14, 2021, the manager of which at all relevant times was A. Kang.

7.    Defendant IPE Convention LLC ("IPE Convention"), is or was a Nevada limited liability company formed on November 4, 2022, the manager of which at all relevant times was A. Kang.

8.    Defendant Infinite Prospects Entertainment Inc., aka Infinite Prospects Entertainment Holdings, LLC ("IPE, Inc."), is a Delaware corporation formed on July 21, 2023.  Plaintiff is informed and believes, and therefore alleges A. Kang is a senior

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

officer and/or principal of IPE, Inc.

## GENERAL ALLEGATIONS

**A.    IPE Promissory Notes**

9.    In or about mid to late 2022, A. Kang approached Plaintiff with a request Plaintiff advance funds to or on his behalf. A. Kang represented the funds were to be used to develop an entertainment and events company focused on bridging Asian and Western pop culture, commonly known as IPE. IPE is an acronym for Infinite Prospects Entertainment, a name used multiple times by A. Kang in the formation of Nevada and Delaware entities.

10.    Based on representations made by A. Kang, Plaintiff agreed to advance funds to or on his behalf, which advances were made in several transfers. The first transfer was made by wire transfer and was primarily designed to test the accuracy of the instructions given. That first transfer was in the amount of $100.00, made on November 15, 2022. Plaintiff was given wire transfer instructions by A. Kang which directed Plaintiff to advance monies to IPE Convention, a company formed only days before the first transfer was made

11.    After the test transfer was confirmed, a second transfer was effectuated on November 16, 2022 in the amount of $1,000,000.00. This second transfer was made pursuant to a written promissory note dated November 15, 2022, executed by Infinite Prospects Entertainment Holdings, LLC (IPE), aka IPE Holdings, LLC (the "First IPE Note"). A true and correct copy of the First IPE Note is attached hereto as **Exhibit A**. A. Kang executed the First IPE Note as the Manager and Authorized Signatory for the maker. Like the test transfer, this transfer of $1,000,000.00 was made to an account in the name of IPE Convention.

12.    A third transfer of $1,000,000.00 was made on March 1, 2023. This third transfer was made pursuant to a written promissory note dated March 1, 2023, executed by Infinite Prospects Entertainment Holdings, LLC (IPE), aka IPE Holdings, LLC (the "Second IPE Note"). A true and correct copy of the Second IPE Note is

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

attached hereto as **Exhibit B**. A. Kang executed the Second IPE Note as the Manager and Authorized Signatory for the maker. This transfer of $1,000,000.00 was made to an account in the name of IPE Convention.

13. A fourth transfer of $500,000.00 was made on March 28, 2023. This fourth transfer was made pursuant to a written promissory note dated March 27, 2023, executed by Infinite Prospects Entertainment Holdings, LLC (IPE), aka IPE Holdings, LLC (the "Third IPE Note"). A true and correct copy of the Third IPE Note is attached hereto as **Exhibit C**. A. Kang executed the Third IPE Note as the Manager and Authorized Signatory for the maker. This transfer of $500,000.00 was made to an account in the name of IPE Convention.

14. A fifth transfer of $500,000.00 was made on April 12, 2023. This fifth transfer was made pursuant to a written promissory note dated April 1, 2023, executed by Infinite Prospects Entertainment Holdings, LLC (IPE), aka IPE Holdings, LLC (the "Fourth IPE Note"). A true and correct copy of the Fourth IPE Note is attached hereto as **Exhibit D**. A. Kang executed the Fourth IPE Note as the Manager and Authorized Signatory for the maker. This transfer of $500,000.00 was made to an account in the name of IPE Convention.

15. A sixth and final transfer of $500,000.00 was made on April 17, 2023. This sixth transfer was made pursuant to a written promissory note dated April 17, 2023, executed by Infinite Prospects Entertainment Holdings, LLC (IPE), aka IPE Holdings, LLC (the "Fifth IPE Note," and collectively with the First IPE Note, the Second IPE Note, the Third IPE Note, and the Fourth IPE Note, the "IPE Notes"). A true and correct copy of the Fifth IPE Note is attached hereto as **Exhibit E**. A. Kang executed the Fifth IPE Note as the Manager and Authorized Signatory for the maker. This transfer of $500,000.00 was made to an account in the name of IPE Convention. With this last transfer, total monies advanced aggregated to $3,500,100.00. This Fifth IPE Note has been satisfied and no claim is asserted with respect thereto.

16. Each of the IPE Notes bore simple interest at the annual rate of three

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

percent (3%).  The First IPE Note purported to mature on May 23, 2022 [sic], while each of the other IPE Notes had maturity dates of June 23, 2023.  The IPE Notes did not call for payments of interest or otherwise during their terms, and no payments whatsoever were made during their terms.  In addition, each of the IPE Notes includes an attorneys' fees clause providing, among other things, "[i]f any attorney is engaged by [Plaintiff] to enforce or defend any provision of this Note (including in any bankruptcy proceeding), or as a consequence of any default, with or without the filing of any legal action or proceeding, then the Maker shall pay to [Plaintiff] immediately upon demand all reasonable attorneys' fees and all costs incurred by [Plaintiff] in connection therewith, together with interest thereon[.]"

17.    Following maturity, no payments were made on the First IPE Note, the Second IPE Note, the Third IPE Note, or the Fourth IPE Note (collectively, the "Outstanding IPE Notes") and they remained unpaid and outstanding the following year, 2024.  During the year, there were conversations had by and between Plaintiff and/or his representatives, on one hand, and A. Kang and/or his representatives, on the other.  The parties discussed financial statements from the maker, a guaranty by A. Kang of the monies advanced pursuant to the IPE Notes, an increase in interest rates, a new maturity date for repayment of the funds advanced, and an assumption of the corporate obligations by a new entity to be formed in Delaware.

18.    From the negotiations, several new documents were executed.  One, an Amended and Restated Promissory Note in the amount of $3,265,027.39 was executed by Infinite Prospects Entertainment Holdings, LLC, dated October 15, 2024 (the "Restated Note").  This Restated Note was executed by Alex Kang as the Manager and Authorized Signatory for the maker.  A true and correct copy of the Restated Note is attached hereto as **Exhibit F**.  By the recitations therein, the Restated Note is intended to amend, consolidate, and restate the first four prior IPE Notes, extend the maturity dates thereof, and increase the interest rates set forth therein.  The Restated Note also includes the same attorneys' fees provisions included in each of

the IPE Notes referenced above.

19.    A second document created from the negotiations is a written Guaranty, executed by Alexander Kang, aka Alex Kang, on October 15, 2024, a true and correct copy of which is attached hereto as **Exhibit G**.  The Guaranty is a commitment by A. Kang to guarantee as a primary obligor all obligations represented by the Restated Note, described in the Guaranty as the Amended Note.

20.    The Maturity Date of the Restated Note is September 30, 2025.  No payments have been made on the Restated Note and the full amount of principal plus accrued interest remains outstanding and unpaid.

**B.    The Personal Note**

21.    On or about January 11, 2024, Plaintiff advanced the sum of $260,000 to A. Kang, individually, which advance was memorialized in a written promissory note, executed by A. Kang on October 15, 2024 (the "Personal Note").   A true and correct copy of the Personal Note, executed by A. Kang, is attached hereto as **Exhibit H**.  Pursuant to the note, simple interest accrues from the date the funds were received by the maker at the annual rate of ten percent (10%).  The Personal Note matured on January 30, 2025.  Plaintiff has received no payments whatsoever on the Personal Note. The Personal Note also includes the same attorneys' fees provisions included in each of the IPE Notes and the Restated Note referenced above.

**C.    The Entities**

22.    This Complaint names as defendants a number of entities.  The first is Infinite Prospects Entertainment LLC (defined above as IPE, LLC).  This entity was formed on December 14, 2021, in the State of Nevada as a limited liability company. Plaintiff is informed and believes this entity is also known as Infinite Prospects Entertainment Holdings, LLC, purportedly a Nevada limited liability company and the maker of the IPE Notes (referenced in paragraphs 11 through 15 of this Complaint), and the Restated Note (referenced in paragraph 18 of this Complaint). To Plaintiff's knowledge, information and belief, no entity by the name of Infinite

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL  213.626.2311 • FAX  954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

Prospects Entertainment Holdings, LLC, was ever formed in Nevada. According to the public records of the Nevada Secretary of State, IPE, LLC was dissolved by election of its Manager, A. Kang, on July 18, 2024.

23. The second entity named as a defendant in this Complaint is IPE Convention. This entity was formed on November 4, 2022, as a limited liability company under the laws of the State of Nevada. This entity was the recipient of the entire $3,500,100 referenced in paragraphs 11 through 15 of this Complaint. Plaintiff is informed and believes, and therefore alleges this entity received and disbursed funds intended for the operations of IPE, LLC, and for this and other reasons, should be considered the alter ego of IPE, LLC. According to the public records of the Nevada Secretary of State, IPE Convention was dissolved by election of its Manager, A. Kang, on July 18, 2024.

24. The third entity is Infinite Prospects Entertainment Inc. (defined above as IPE, Inc.). This entity was formed on July 21, 2023, as a corporation under the laws of the State of Delaware. Plaintiff is informed and believes, and therefore alleges IPE, Inc., was formed to be the successor to IPE, LLC, and IPE Convention. After formation, and without paying or otherwise arranging for the payment of their liabilities, IPE, LLC, and IPE Convention were dissolved at the election of their Manager, A. Kang. As a successor, IPE, Inc., is responsible for the liabilities owing by IPE, LLC and IPE Convention.

25. Plaintiff is informed and believes, and therefore alleges A. Kang has completely disregarded corporate formalities and has utilized all entities mentioned herein to further his personal goals without regard to the impact such conduct would have on creditors of the entities. Plaintiff is further informed and believes, and therefore alleges, A. Kang, individually, and the entities mentioned herein were treated as a single enterprise such that all Defendants should be deemed to be one and the same, alter egos of one another, and collectively responsible for the debts owing to Plaintiff as alleged herein.

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

## FIRST CLAIM FOR RELIEF
### (Breach of Promissory Notes)

26.    Plaintiff incorporates by reference each of his allegations contained in paragraphs 1 through 25 as though fully set forth herein.

27.    For valuable consideration, Defendant IPE, LLC, executed the Outstanding IPE Notes in the collective principal amount of $3,000,000, payable to Plaintiff.  Plaintiff is the holder of the Outstanding IPE Notes and entitled to payment thereunder.

28.    Plaintiff fulfilled all of his obligations and performed all conditions and covenants, and conditions precedent on his part to be performed in accordance with the terms and conditions of the promissory notes, except for those that have been excused, waived, or made impossible by acts of Defendants, including their breach.

29.    The obligations under the Outstanding IPE Notes have fully matured and the amounts thereunder are fully due and payable.  Plaintiff has made demand upon Defendant IPE, LLC, to pay the amounts owed, but Defendant IPE, LLC, fails and refuses to pay any amount due thereunder.

30.    Defendant IPE, LLC, is now in default of the Outstanding IPE Notes, and there is now due and owing to Plaintiff the principal sum of no less than $3,000,000, plus interest and other charges.

31.    Plaintiff has been damaged in the principal amount of no less than $3,000,000 by reason of breaches of the Outstanding IPE Notes.  Plaintiff has furthermore been required to retain legal counsel to assist with collection and enforcement of the promissory notes, the fees and costs of which are to be borne by Defendant IPE, LLC.

## SECOND CLAIM FOR RELIEF
### (Breach of Restated Note)

32.    Plaintiff incorporates by reference each of his allegations contained in paragraphs 1 through 25 as though fully set forth herein.

33. For valuable consideration, Defendant IPE, LLC, executed the Restated Note in the principal amount of $3,265,027.39, payable to Plaintiff. Plaintiff is the holder of the Restated Note and entitled to payment thereunder.

34. Plaintiff fulfilled all of his obligations and performed all conditions and covenants, and conditions precedent on his part to be performed in accordance with the terms and conditions of the Restated Note, except for those that have been excused, waived, or made impossible by acts of Defendants, including their breach.

35. The obligations under the Restated Note have fully matured and the amounts thereunder are fully due and payable. Plaintiff has made demand upon Defendant IPE, LLC, to pay the amounts owed, but Defendant IPE, LLC fails and refuses to pay any amount due thereunder.

36. Defendant IPE, LLC, is now in default of the Restated Note, and there is now due and owing to Plaintiff the principal sum of no less than $3,265,027.39, plus interest and other charges.

37. Plaintiff has been damaged in the amount of no less than $3,265,027.39 by reason of breaches of the Restated Note. Plaintiff has furthermore been required to retain legal counsel to assist with collection and enforcement of the Restated Note, the fees and costs of which are to be borne by Defendant IPE, LLC.

### THIRD CLAIM FOR RELIEF
### (Breach of Guaranty)

38. Plaintiff incorporates by reference each of his allegations contained in paragraphs 1 through 25 as though fully set forth herein.

39. For valuable consideration, Defendant A. Kang executed a written Guaranty whereby he agreed, among other things, to guarantee the prompt payment of all amounts due and owing under the Restated Note, payable to Plaintiff. Plaintiff is the holder of the Restated Note, the holder and beneficiary of the Guaranty, and entitled to payment thereunder.

40. Plaintiff fulfilled all of his obligations and performed all conditions and

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

AGT 64968282v5

covenants, and conditions precedent on his part to be performed in accordance with the terms and conditions of the Guaranty, except for those that have been excused, waived, or made impossible by acts of Defendants, including their breach.

41.    The obligations under the Guaranty have fully matured and the amounts thereunder are fully due and payable.  Plaintiff has made demand upon Defendant A. Kang to pay the amounts owed, but Defendant A. Kang fails and refuses to pay any amount due thereunder.

42.    Defendant A. Kang is now in default of the Guaranty, and there is now due and owing to Plaintiff the principal sum of no less than $3,265,027.39, plus interest and other charges.

43.    Plaintiff has been damaged in the amount of no less than $3,265,027.39 by reason of breaches of the Guaranty.  Plaintiff has furthermore been required to retain legal counsel to assist with collection and enforcement of the Guaranty, the fees and costs of which are to be borne by Defendant A. Kang.

**FOURTH CLAIM FOR RELIEF**

**(Breach of Personal Note)**

44.    Plaintiff incorporates by reference each of his allegations contained in paragraphs 1 through 25 as though fully set forth herein.

45.    For valuable consideration, Defendant A. Kang executed the Personal Note, in the principal amount of $260,000, payable to Plaintiff.  Plaintiff is the holder of the Personal Note and entitled to payment thereunder.

46.    Plaintiff fulfilled all of his obligations and performed all conditions and covenants, and conditions precedent on his part to be performed in accordance with the terms and conditions of the Personal Note, except for those that have been excused, waived, or made impossible by acts of Defendants, including their breach.

47.    The obligations under the Personal Note have fully matured and the amounts thereunder are fully due and payable.  Plaintiff has made demand upon Defendant A. Kang to pay the amounts owed, but Defendant A. Kang fails and refuses

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

to pay any amount due thereunder.

48.     Defendant A. Kang is now in default of the Personal Note, and there is now due and owing to Plaintiff the principal sum of no less than $260,000, plus interest and other charges.

49.     Plaintiff has been damaged in the amount of no less than $260,000 by reason of breaches of the Personal Note.  Plaintiff has furthermore been required to retain legal counsel to assist with collection and enforcement of the Personal Note, the fees and costs of which are to be borne by Defendant A. Kang.

## FIFTH CLAIM FOR RELIEF

### (Open Book)

50.     Plaintiff incorporates by reference each of his allegations contained in paragraphs 1 through 25 as though fully set forth herein.

51.     Between November 2022 and April 2023, Defendants became indebted to Plaintiff on an open book account in the collective amount of no less than $3,260,100 ("Open Book Account").

52.     The amount owing on the Open Book Account is and remains immediately due and payable in full.  Despite Plaintiff's repeated demands for payment, Defendants have failed and refused, and continue to fail and refuse, to pay the amount owing on the Open Book Account, or any portion thereof.

53.     As a result of the failure and refusal of Defendants to pay the amount owing on the Open Book Account, Plaintiff has been forced to retain counsel and to incur, and to continue to incur, attorneys' fees and costs to recover payment on the open book account.

54.     As a result of the failure and refusal of Defendants to pay the amount owing on the Open Book Account, Plaintiff has been damaged in the amount of no less than $3,260,100, plus accrued and unpaid interest, costs, attorneys' fee and other related expenses, post-judgment interest as allowed by law, and other damages according to proof, and there is now due, owing and unpaid from Defendants to

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

AGT 64968282v5

11

Plaintiff the sum of no less than $3,260,100 plus accrued and unpaid interest, costs, attorneys' fee and other related expenses, post-judgment interest as allowed by law, and other damages according to proof.

## SIXTH CLAIM FOR RELIEF

### (Account Stated)

55.   Plaintiff incorporates by reference each of his allegations contained in paragraphs 1 through 25 as though fully set forth herein.

56.   Between November 2022 and April 2023, an account was stated in writing by and between Plaintiff and Defendants, wherein it was agreed Defendants would be indebted to Plaintiff in the collective amount of no less than $3,260,100 (the "Account Stated").

57.   The amount owing on the Account Stated is and remains immediately due and payable in full.  Despite Plaintiff's repeated demands for payment, Defendants have failed and refused, and continue to fail and refuse, to pay the amount owing on the Account Stated, or any portion thereof.

58.   As a result of the failure and refusal of Defendants to pay the amount owing on the Account Stated, Plaintiff has been forced to retain counsel and to incur, and to continue to incur, attorneys' fees and costs to recover payment on the Account Stated.

59.   As a result of the failure and refusal of Defendants to pay the amount owing on the Account Stated, Plaintiff has been damaged in the amount of no less than $3,260,100 plus accrued and unpaid interest, costs, attorneys' fee and other related expenses, post-judgment interest as allowed by law, and other damages according to proof, and there is now due, owing and unpaid from Defendants to Plaintiff the sum of no less than $3,260,100 plus accrued and unpaid interest, costs, attorneys' fee and other related expenses, post-judgment interest as allowed by law, and other damages according to proof.

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

## SEVENTH CLAIM FOR RELIEF

### (Money Had and Received)

60.     Plaintiff incorporates by reference each of his allegations contained in paragraphs 1 through 25 as though fully set forth herein.

61.     On and after April 2023, Defendants became indebted to Plaintiff for money had and received in the collective amount of no less than $3,260,100 ("Money Had and Received").

62.     The amount of Money Had and Received is and remains immediately due and payable in full.  Despite Plaintiff's repeated demands for payment, Defendants have failed and refused, and continue to fail and refuse, to make any payment to Plaintiff for the Money Had and Received, or any portion thereof.

63.     As a result of the failure and refusal of Defendants to pay for Money Had and Received, Plaintiff has been forced to retain counsel and to incur, and to continue to incur, attorneys' fees and costs to recover payment of the money had and received.

64.     As a result of the failure and refusal of Defendants to pay the Money Had and Received, Plaintiff has been damaged in the amount of no less than $3,260,100 plus accrued and unpaid interest, costs, attorneys' fee and other related expenses, post-judgment interest as allowed by law, and other damages according to proof, and there is now due, owing and unpaid from Defendants to Plaintiff the sum of no less than $3,260,100 plus accrued and unpaid interest, costs, attorneys' fee and other related expenses, post-judgment interest as allowed by law, and other damages according to proof.

## EIGHTH CLAIM FOR RELIEF

### (Fraud)

65.     Plaintiff incorporates by reference each of his allegations contained in paragraphs 1 through 25 as though fully set forth herein.

66.     Defendant A. Kang enticed Plaintiff to advance money to companies he owned or controlled with no intention to repay the monies advanced as promised.

AGT 64968282v5

13

67.     Defendant A. Kang represented to Plaintiff he needed money to expand and support his business, represented to be known as Infinite Prospects Entertainment Holdings, LLC, and, if Plaintiff agreed to loan money for such purposes, he would promptly repay such advances with interest.

68.     Unbeknownst to Plaintiff at the time such representations were made, there was no such entity by the name of Infinite Prospects Entertainment Holdings, LLC.  A. Kang knew no such entity existed, yet he executed promissory notes in the name of such entity as the manager thereof, payable to Plaintiff.  A. Kang instead formed and controlled an entity by the name of Infinite Prospects Entertainment LLC, a Nevada limited liability company (defined above as IPE, LLC), which Plaintiff is informed and believes is the entity to which the advances by Plaintiff were to be made.

69.     To further confound Plaintiff with the intention to hide monies advanced by Plaintiff, in November 2022, A. Kang formed IPE Convention, a Nevada limited liability company.  This company was formed only days before Plaintiff made his first advance at the request of A. Kang.  Though the non-existent Infinite Prospects Entertainment Holdings, LLC, was the maker of the IPE Notes, A. Kang caused Plaintiff to advance over $3,500,000 to IPE Convention.

70.     At the time the advances were made, Plaintiff requested and was given access to bank accounts so he could track his advances and expenditures therefrom. This request was a condition on which the advances were made.  A. Kang agreed to this request at first, but without the consent of or consultation with Plaintiff, A. Kang terminated Plaintiff's access to the bank accounts, thereby denying Plaintiff access to information on use or treatment of the funds advanced by Plaintiff.

71.     In his ongoing scheme to avoid payment, in July 2024, A. Kang caused both IPE, LLC, and IPE Convention to be dissolved.  In or about the same time, Plaintiff and A. Kang were negotiating an extension of the maturity dates of in the Outstanding IPE Notes.  During such negotiations, Plaintiff was unaware of the dissolution of the two companies and A. Kang did not share with Plaintiff the fact he

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

had processed their dissolutions.

72.     Despite the dissolution of the two entities, A. Kang executed the Restated Note to incorporate the obligations under four promissory notes that had come due. The Restated Note was executed by A. Kang as the manager of Infinite Prospects Entertainment Holdings, LLC.  At the time of execution, A. Kang knew no such entity by the name of Infinite Prospects Entertainment Holdings, LLC existed, and he further knew the entity by the name of Infinite Prospects Entertainment, LLC along with IPE Convention LLC had been dissolved.

73.     A. Kang's false representations made with respect to his intentions to pay, his concealment of the fact no entity by the name of Infinite Prospects Entertainment Holdings, LLC existed, his further concealment of the dissolution of IPE, LLC, and IPE Convention were done with the intent to mislead Plaintiff, and his false promise to give ongoing access to Plaintiff of the bank accounts in which Plaintiff's advances were made, were part of a scheme designed by A. Kang to convince Plaintiff to advance over $3,000,000 with no intention to repay such debt.

74.     Plaintiff was unaware of the true intentions of A. Kang and of the information withheld from him.  Had Plaintiff known of the scheme of A. Kang as described above, he would not have advanced money at the request of A. Kang.

75.     The conduct of A. Kang represents fraud.  Plaintiff has been damaged by such conduct in the principal amount of no less than $3,000,000, plus interest, costs, attorneys' fees and other expenditures.

76.     A. Kang's conduct was done intentionally and maliciously, for which punitive damages should be awarded.

## NINTH CLAIM FOR RELIEF

### (Declaratory Relief)

77.     Plaintiff incorporates by reference each of his allegations contained in paragraphs 1 through 25 and paragraphs 66 through 76 as though fully set forth herein.

78.     Plaintiff alleges, on information and belief, at all material times herein,

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

Defendants, and each of them, were acting as the partners, agents, servants, employees, alter egos, successors or predecessors in interest, or contractors of the other Defendants, and were acting within the course and scope of such relationship, with the knowledge, express or implied, of each such other named Defendant.

79. Infinite Prospects Entertainment Holdings, LLC, IPE, LLC, IPE Convention, and IPE, Inc., have been operated and managed by A. Kang as a single enterprise without regard to corporate formalities or a separate existence. These entities should be considered one and the same, alter egos of one another and of A. Kang, and be deemed liable for the debts owing to Plaintiff as alleged herein.

80. For purposes of collection and to protect his rights, Plaintiff requires a declaration of this Court which finds each of Alexander Kang, Infinite Prospects Entertainment Holdings, LLC, Infinite Prospects Entertainment LLC, IPE Convention LLC, and Infinite Prospects Entertainment Inc. are one and the same entity and are jointly and severally liable for the debts owing to Plaintiff as alleged herein.

81. Plaintiff is informed and believes Defendants challenge the declaration requested by Plaintiff and oppose this relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

ON THE FIRST CLAIM FOR RELIEF:

1. Entry of judgment in favor of Plaintiff and against Defendants in the collective principal amount of no less than $3,000,000;

ON THE SECOND CLAIM FOR RELIEF:

2. Entry of judgment in favor of Plaintiff and against Defendants in the principal amount of no less than $3,265,027.39;

ON THE THIRD CLAIM FOR RELIEF:

3. Entry of judgment in favor of Plaintiff and against Defendants in the principal amount of no less than $3,265,027.39;

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

ON THE FOURTH CLAIM FOR RELIEF:

4.　Entry of judgment in favor of Plaintiff and against Defendants in the principal amount of no less than $260,000;

ON THE FIFTH CLAIM FOR RELIEF:

5.　Entry of judgment in favor of Plaintiff and against Defendants in the collective principal amount of no less than $3,260,100;

ON THE SIXTH CLAIM FOR RELIEF:

6.　Entry of judgment in favor of Plaintiff and against Defendants in the collective principal amount of no less than $3,260,100;

ON THE SEVENTH CLAIM FOR RELIEF:

7.　Entry of judgment in favor of Plaintiff and against Defendants in the collective principal amount of no less than $3,260,100;

ON THE EIGHTH CLAIM FOR RELIEF:

8.　Entry of judgment against Defendants for fraud and award damages in the principal amount of no less than $3,260,100;

9.　For an award of punitive damages according to proof;

ON THE NINTH CLAIM FOR RELIEF:

10.　Entry of a declaration of this Court which finds each of Defendants A. Kang, Infinite Prospects Entertainment Holdings, LLC, IPE, LLC, IPE Convention, and IPE, Inc., are one and the same entity and are jointly and severally liable for the debts owing to Plaintiff as alleged in the Complaint;

ON ALL CLAIMS FOR RELIEF:

11.　For pre- and post-judgment interest on the judgment amounts to the fullest extent allowed by applicable law;

12.　For costs of suit incurred herein, including, without limitation, attorneys' fees, as permitted by law or contract; and

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

13.    For such further and other relief as this Court deems just and proper.

DATED:  June 8, 2026                 **GREENSPOON MARDER LLP**


By:    _/s/ Alan G. Tippie_

Alan G. Tippie
Attorneys for Plaintiff, Daniel Kang,
Trustee of the Kang Living Trust

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

AGT 64968282v5                          18

# EXHIBIT A

**No. 1**

## Infinite Prospects Entertainment  Holdings, LLC (IPE)
(A Nevada Limited Liability Company)

Amount: $1,000,000                                             Las Vegas, Nevada
                                                              November 15, 2022

PROMISSORY NOTE


For value received, IPE HOLDINGS, LLC, a company organized under the laws of Nevada ("**Maker**"), promises to pay to the order of Kang Living Trust ("**Lender**"), the principal sum of One Million United States Dollars (US$1,000,000) with simple interest on the outstanding principal amount at the rate of three percent (3%) per annum.  Interest shall commence with the date funds are actually received and shall continue on the outstanding principal until paid in full. Interest shall be payable upon maturity.

      1.     Payment.  Unless otherwise extended by the consent of the Maker and Lender, the outstanding principal amount and accrued and unpaid interest shall be due and payable on May 23, 2022 (the "**Maturity Date**").  This Note and the indebtedness evidenced hereby may be prepaid at the option of the Maker.  All payments of interest and principal shall be in lawful money of the United States of America at the principal office of Maker, or at such other place Lender may from time to time designate in writing to Maker.

      2.     Default Rate of Interest.  From and after either (a) the occurrence of a default (whether or not Lender has elected to accelerate unpaid principal and interest under this Note as a result of such default); or (b) the maturity of this Note (whether the stated maturity date of this Note or the maturity date resulting from Lender's acceleration of unpaid principal and interest), then in either of such circumstances, interest on the unpaid principal balance of this Note shall accrue at a rate equal to three percent (3%) per annum above the otherwise applicable interest rate, but in no event shall such default rate exceed the maximum interest rate allowable by law.

      3.     Events of Default.  Upon the occurrence of any of the following specified events (each an "**Event of Default**"), unless such Event of Default shall have been waived or cured prior to the exercise of the remedies set forth below:

      (a)     Payments.  Any default by Maker in the payment when due of any principal and unpaid accrued interest under the Note;

      (b)     Breach.  Maker's breach of any of the terms under this Note (other than payment) which remains unremedied for period of thirty (30) days after Lender provides Maker with written notice of such breach;

      (c)     Institution of Bankruptcy Proceedings.  The institution by Maker of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to institution of bankruptcy or insolvency proceedings against it or the filing by it of a petition or answer or consent seeking reorganization or release under any bankruptcy act, or any other applicable

**000019**

federal or state law, or the consent by it to the filing of any such petition or the appointment of a receiver, liquidator, assignee, trustee, or other similar official, of Maker, or of any substantial part of Maker's property, or the making by Maker of an assignment for the benefit of creditors, or the taking of corporate action by Maker in furtherance of any such action;

(d)    Continuation of Bankruptcy Proceedings.  If, within sixty (60) days after the commencement of an action against Maker (and service of process in connection therewith on Maker) seeking any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such action shall not have been resolved in favor of Maker or all orders or proceedings thereunder affecting the operations or the business of Maker stayed, or if the stay of any such order or proceeding shall thereafter be set aside, or if, within sixty (60) days after the appointment without the consent or acquiescence of Maker of any trustee, receiver or liquidator of Maker or of all or any substantial part of the properties of Maker, such appointment shall not have been vacated; or

Then, and in any such event, and at any time thereafter, if any events shall be continuing, Lender shall have the option to declare the principal amount of the Note, and all accrued and unpaid interest thereon, to be immediately due and payable upon written notice to Maker.  Lender may exercise any and all rights and remedies which Lender may have under this Note and applicable law.

4.    Waiver.  Maker waives presentment, notice of nonperformance, protest, notice of protest, notice of dishonor, demand for payment and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of this Note; (b) waive the right to assert any statute of limitations as a defense to the enforcement of this Note to the fullest extent permitted by law; (c) consent to all extensions and renewals of the time of payment of this Note and to all modifications of this Note by Lender and Maker without notice to and without in any way affecting the liability of any person for payment of this Note; and (d) consent to any forbearance by Lender and to the release, addition, and substitution of any person liable for payment of this Note and of any or all of the security for this Note without notice to and without in any way affecting the liability of any person for payment of this Note.  No delay on the part of Lender in exercising any right hereunder shall operate as a waiver of such right under this Note.

5.    Cumulative Remedies.  Lender's rights and remedies under this Note are cumulative with and in addition to all other legal and equitable rights and remedies which Lender may have in connection with the Loan.

6.    Amendment.  Any term of this Note may be amended and the observance of any term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Lender.  No previous waiver and no failure or delay by Lender in acting with respect to the terms of this Note shall constitute a wavier of any breach, default or failure of a condition or covenant under this Note or the obligations secured thereby.

7.    Assignment.  This Note shall inure to the benefit of and bind the successors, permitted assigns, heirs, executors, and administrators of the parties hereto.  The Maker shall not assign this Note and any unconsented assignment shall be void *ab initio*.

- 2 -

8.      Savings Clause.  Maker and Lender intend to comply at all times with applicable usury laws.  If at any time such laws would render usurious any amounts due under this Note, then it is the Maker's and Lender's express intention that the Maker not be required to pay interest on this Note at a rate in excess of the maximum lawful rate, that the provisions of this paragraph shall control over all other provisions of this Note which may be in apparent conflict hereunder, that such excess amount shall be immediately credited to the principal balance of this Note (or, if this Note has been fully paid, refunded by Lender to the Maker), and the provisions hereof shall be immediately reformed and the amounts thereafter decreased, so as to comply with the then applicable usury law, but so as to permit the recovery of the fullest amount otherwise due under this Note.  Any such crediting or refund shall not cure or waive any default by the Maker under this Note.  The term "applicable law" as used in this Note shall mean the laws of the State of California as such laws now exist or may be changed or amended or come into effect in the future.

9.      Notice.  All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iii) two (2) days after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.  All communications shall be addressed to Lender at the last address furnished to the Maker by Lender in writing or, in the case of the Maker, at the principal offices of the Maker, or at such other address as any party or the Maker may designate by giving at least ten (10) days' advance written notice to all other parties.

10.     Governing Law; Jurisdiction.  This Note is made in accordance with and shall be construed under the laws of the State of California, other than the conflicts of law principles thereof.  The Maker agrees that the courts of the State of California and Federal District Courts located in Los Angeles County, California, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Note, regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or violation of any law.  The Maker irrevocably consents to the personal jurisdiction of such courts, to such venue, and to the service of process in the manner provided for the giving of notices in this Agreement.  The Maker waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

11.     Loss of Note.  If this Note is lost, stolen, or destroyed, upon the Maker's receipt of a reasonably satisfactory indemnification agreement executed by Lender, or if this Note is mutilated, upon Lender's surrender of the mutilated Note to the Maker, the Maker shall execute and deliver to Lender a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

12.     Attorneys' Fees.  If any attorney is engaged by Lender to enforce or defend any provision of this Note (including in any bankruptcy proceeding), or as a consequence of any default, with or without the filing of any legal action or proceeding, then the Maker shall pay to Lender immediately upon demand all reasonable attorneys' fees and all costs incurred by Lender

000021

in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance owing hereunder as if such unpaid attorneys' fees and costs had been added to the principal.

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

MAKER

IPE HOLDINGS, LLC,
a Nevada limited liability company

Alex Kang

Verified by pdfFiller
03/27/2023

By: _____
Name:  Alex Kang
Title:  Manager and Authorized Signatory

[SIGNATURE PAGE TO PROMISSORY NOTE]

- 4 -

000022

# EXHIBIT B

**No. 2**

## Infinite Prospects Entertainment  Holdings, LLC (IPE)

(A Nevada Limited Liability Company)

Amount: $1,000,000          Las Vegas, Nevada
March 1, 2023

PROMISSORY NOTE

For value received, IPE HOLDINGS, LLC, a company organized under the laws of Nevada ("**Maker**"), promises to pay to the order of Kang Living Trust ("**Lender**"), the principal sum of One Million United States Dollars (US$1,000,000) with simple interest on the outstanding principal amount at the rate of three percent (3%) per annum.  Interest shall commence with the date funds are actually received and shall continue on the outstanding principal until paid in full.  Interest shall be payable upon maturity.

     1.      Payment.  Unless otherwise extended by the consent of the Maker and Lender, the outstanding principal amount and accrued and unpaid interest shall be due and payable on June 23, 2023 (the "**Maturity Date**").  This Note and the indebtedness evidenced hereby may be prepaid at the option of the Maker.  All payments of interest and principal shall be in lawful money of the United States of America at the principal office of Maker, or at such other place Lender may from time to time designate in writing to Maker.

     2.      Default Rate of Interest.  From and after either (a) the occurrence of a default (whether or not Lender has elected to accelerate unpaid principal and interest under this Note as a result of such default); or (b) the maturity of this Note (whether the stated maturity date of this Note or the maturity date resulting from Lender's acceleration of unpaid principal and interest), then in either of such circumstances, interest on the unpaid principal balance of this Note shall accrue at a rate equal to three percent (3%) per annum above the otherwise applicable interest rate, but in no event shall such default rate exceed the maximum interest rate allowable by law.

     3.      Events of Default.  Upon the occurrence of any of the following specified events (each an "**Event of Default**"), unless such Event of Default shall have been waived or cured prior to the exercise of the remedies set forth below:

     (a)      Payments.  Any default by Maker in the payment when due of any principal and unpaid accrued interest under the Note;

     (b)      Breach.  Maker's breach of any of the terms under this Note (other than payment) which remains unremedied for period of thirty (30) days after Lender provides Maker with written notice of such breach;

     (c)      Institution of Bankruptcy Proceedings.  The institution by Maker of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to institution of bankruptcy or insolvency proceedings against it or the filing by it of a petition or answer or

**000023**

consent seeking reorganization or release under any bankruptcy act, or any other applicable federal or state law, or the consent by it to the filing of any such petition or the appointment of a receiver, liquidator, assignee, trustee, or other similar official, of Maker, or of any substantial part of Maker's property, or the making by Maker of an assignment for the benefit of creditors, or the taking of corporate action by Maker in furtherance of any such action;

(d)     Continuation of Bankruptcy Proceedings.  If, within sixty (60) days after the commencement of an action against Maker (and service of process in connection therewith on Maker) seeking any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such action shall not have been resolved in favor of Maker or all orders or proceedings thereunder affecting the operations or the business of Maker stayed, or if the stay of any such order or proceeding shall thereafter be set aside, or if, within sixty (60) days after the appointment without the consent or acquiescence of Maker of any trustee, receiver or liquidator of Maker or of all or any substantial part of the properties of Maker, such appointment shall not have been vacated; or

Then, and in any such event, and at any time thereafter, if any events shall be continuing, Lender shall have the option to declare the principal amount of the Note, and all accrued and unpaid interest thereon, to be immediately due and payable upon written notice to Maker.  Lender may exercise any and all rights and remedies which Lender may have under this Note and applicable law.

4.     Waiver.  Maker waives presentment, notice of nonperformance, protest, notice of protest, notice of dishonor, demand for payment and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of this Note; (b) waive the right to assert any statute of limitations as a defense to the enforcement of this Note to the fullest extent permitted by law; (c) consent to all extensions and renewals of the time of payment of this Note and to all modifications of this Note by Lender and Maker without notice to and without in any way affecting the liability of any person for payment of this Note; and (d) consent to any forbearance by Lender and to the release, addition, and substitution of any person liable for payment of this Note and of any or all of the security for this Note without notice to and without in any way affecting the liability of any person for payment of this Note.  No delay on the part of Lender in exercising any right hereunder shall operate as a waiver of such right under this Note.

5.     Cumulative Remedies.  Lender's rights and remedies under this Note are cumulative with and in addition to all other legal and equitable rights and remedies which Lender may have in connection with the Loan.

6.     Amendment.  Any term of this Note may be amended and the observance of any term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Lender.  No previous waiver and no failure or delay by Lender in acting with respect to the terms of this Note shall constitute a wavier of any breach, default or failure of a condition or covenant under this Note or the obligations secured thereby.

000024

7.      _Assignment_.   This Note shall inure to the benefit of and bind the successors, permitted assigns, heirs, executors, and administrators of the parties hereto.  The Maker shall not assign this Note and any unconsented assignment shall be void _ab initio_.

8.      _Savings Clause_.   Maker and Lender intend to comply at all times with applicable usury laws.  If at any time such laws would render usurious any amounts due under this Note, then it is the Maker's and Lender's express intention that the Maker not be required to pay interest on this Note at a rate in excess of the maximum lawful rate, that the provisions of this paragraph shall control over all other provisions of this Note which may be in apparent conflict hereunder, that such excess amount shall be immediately credited to the principal balance of this Note (or, if this Note has been fully paid, refunded by Lender to the Maker), and the provisions hereof shall be immediately reformed and the amounts thereafter decreased, so as to comply with the then applicable usury law, but so as to permit the recovery of the fullest amount otherwise due under this Note.  Any such crediting or refund shall not cure or waive any default by the Maker under this Note.  The term "applicable law" as used in this Note shall mean the laws of the State of California as such laws now exist or may be changed or amended or come into effect in the future.

9.      _Notice_.   All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iii) two (2) days after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.  All communications shall be addressed to Lender at the last address furnished to the Maker by Lender in writing or, in the case of the Maker, at the principal offices of the Maker, or at such other address as any party or the Maker may designate by giving at least ten (10) days' advance written notice to all other parties.

10.      _Governing Law; Jurisdiction_.   This Note is made in accordance with and shall be construed under the laws of the State of California, other than the conflicts of law principles thereof.  The Maker agrees that the courts of the State of California and Federal District Courts located in Los Angeles County, California, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Note, regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or violation of any law.  The Maker irrevocably consents to the personal jurisdiction of such courts, to such venue, and to the service of process in the manner provided for the giving of notices in this Agreement.  The Maker waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

11.      _Loss of Note_.   If this Note is lost, stolen, or destroyed, upon the Maker's receipt of a reasonably satisfactory indemnification agreement executed by Lender, or if this Note is mutilated, upon Lender's surrender of the mutilated Note to the Maker, the Maker shall execute and deliver to Lender a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

**000025**

12.    <u>Attorneys' Fees</u>.  If any attorney is engaged by Lender to enforce or defend any provision of this Note (including in any bankruptcy proceeding), or as a consequence of any default, with or without the filing of any legal action or proceeding, then the Maker shall pay to Lender immediately upon demand all reasonable attorneys' fees and all costs incurred by Lender in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance owing hereunder as if such unpaid attorneys' fees and costs had been added to the principal.

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

MAKER

IPE HOLDINGS, LLC,
a Nevada limited liability company

By: _____
Name:  Alex Kang
Title:  Manager and Authorized Signatory

[SIGNATURE PAGE TO PROMISSORY NOTE]

- 4 -

000026

# EXHIBIT C

**No. 2**

# Infinite Prospects Entertainment  Holdings, LLC (IPE)

(A Nevada Limited Liability Company)

Amount: $500,000                                                          Las Vegas, Nevada
                                                                          March 27, 2023

PROMISSORY NOTE

For value received, IPE HOLDINGS, LLC, a company organized under the laws of Nevada ("**Maker**"), promises to pay to the order of Kang Living Trust ("**Lender**"), the principal sum of Five Hundred Thousand United States Dollars (US$500,000) with simple interest on the outstanding principal amount at the rate of three percent (3%) per annum.  Interest shall commence with the date funds are actually received and shall continue on the outstanding principal until paid in full.  Interest shall be payable upon maturity.

1.      Payment.  Unless otherwise extended by the consent of the Maker and Lender, the outstanding principal amount and accrued and unpaid interest shall be due and payable on June 23, 2023 (the "**Maturity Date**").  This Note and the indebtedness evidenced hereby may be prepaid at the option of the Maker.  All payments of interest and principal shall be in lawful money of the United States of America at the principal office of Maker, or at such other place Lender may from time to time designate in writing to Maker.

2.      Default Rate of Interest.  From and after either (a) the occurrence of a default (whether or not Lender has elected to accelerate unpaid principal and interest under this Note as a result of such default); or (b) the maturity of this Note (whether the stated maturity date of this Note or the maturity date resulting from Lender's acceleration of unpaid principal and interest), then in either of such circumstances, interest on the unpaid principal balance of this Note shall accrue at a rate equal to three percent (3%) per annum above the otherwise applicable interest rate, but in no event shall such default rate exceed the maximum interest rate allowable by law.

3.      Events of Default.  Upon the occurrence of any of the following specified events (each an "**Event of Default**"), unless such Event of Default shall have been waived or cured prior to the exercise of the remedies set forth below:

(a)      Payments.  Any default by Maker in the payment when due of any principal and unpaid accrued interest under the Note;

(b)      Breach.  Maker's breach of any of the terms under this Note (other than payment) which remains unremedied for period of thirty (30) days after Lender provides Maker with written notice of such breach;

(c)      Institution of Bankruptcy Proceedings.  The institution by Maker of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to institution of bankruptcy or insolvency proceedings against it or the filing by it of a petition or answer or

**000027**

consent seeking reorganization or release under any bankruptcy act, or any other applicable federal or state law, or the consent by it to the filing of any such petition or the appointment of a receiver, liquidator, assignee, trustee, or other similar official, of Maker, or of any substantial part of Maker's property, or the making by Maker of an assignment for the benefit of creditors, or the taking of corporate action by Maker in furtherance of any such action;

(d)    Continuation of Bankruptcy Proceedings.  If, within sixty (60) days after the commencement of an action against Maker (and service of process in connection therewith on Maker) seeking any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such action shall not have been resolved in favor of Maker or all orders or proceedings thereunder affecting the operations or the business of Maker stayed, or if the stay of any such order or proceeding shall thereafter be set aside, or if, within sixty (60) days after the appointment without the consent or acquiescence of Maker of any trustee, receiver or liquidator of Maker or of all or any substantial part of the properties of Maker, such appointment shall not have been vacated; or

Then, and in any such event, and at any time thereafter, if any events shall be continuing, Lender shall have the option to declare the principal amount of the Note, and all accrued and unpaid interest thereon, to be immediately due and payable upon written notice to Maker.  Lender may exercise any and all rights and remedies which Lender may have under this Note and applicable law.

4.    Waiver.  Maker waives presentment, notice of nonperformance, protest, notice of protest, notice of dishonor, demand for payment and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of this Note; (b) waive the right to assert any statute of limitations as a defense to the enforcement of this Note to the fullest extent permitted by law; (c) consent to all extensions and renewals of the time of payment of this Note and to all modifications of this Note by Lender and Maker without notice to and without in any way affecting the liability of any person for payment of this Note; and (d) consent to any forbearance by Lender and to the release, addition, and substitution of any person liable for payment of this Note and of any or all of the security for this Note without notice to and without in any way affecting the liability of any person for payment of this Note.  No delay on the part of Lender in exercising any right hereunder shall operate as a waiver of such right under this Note.

5.    Cumulative Remedies.  Lender's rights and remedies under this Note are cumulative with and in addition to all other legal and equitable rights and remedies which Lender may have in connection with the Loan.

6.    Amendment.  Any term of this Note may be amended and the observance of any term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Lender.  No previous waiver and no failure or delay by Lender in acting with respect to the terms of this Note shall constitute a wavier of any breach, default or failure of a condition or covenant under this Note or the obligations secured thereby.

000028

7.      <u>Assignment</u>.  This Note shall inure to the benefit of and bind the successors, permitted assigns, heirs, executors, and administrators of the parties hereto.  The Maker shall not assign this Note and any unconsented assignment shall be void *ab initio*.

8.      <u>Savings Clause</u>.  Maker and Lender intend to comply at all times with applicable usury laws.  If at any time such laws would render usurious any amounts due under this Note, then it is the Maker's and Lender's express intention that the Maker not be required to pay interest on this Note at a rate in excess of the maximum lawful rate, that the provisions of this paragraph shall control over all other provisions of this Note which may be in apparent conflict hereunder, that such excess amount shall be immediately credited to the principal balance of this Note (or, if this Note has been fully paid, refunded by Lender to the Maker), and the provisions hereof shall be immediately reformed and the amounts thereafter decreased, so as to comply with the then applicable usury law, but so as to permit the recovery of the fullest amount otherwise due under this Note.  Any such crediting or refund shall not cure or waive any default by the Maker under this Note.  The term "applicable law" as used in this Note shall mean the laws of the State of California as such laws now exist or may be changed or amended or come into effect in the future.

9.      <u>Notice</u>.  All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iii) two (2) days after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.  All communications shall be addressed to Lender at the last address furnished to the Maker by Lender in writing or, in the case of the Maker, at the principal offices of the Maker, or at such other address as any party or the Maker may designate by giving at least ten (10) days' advance written notice to all other parties.

10.      <u>Governing Law; Jurisdiction</u>.  This Note is made in accordance with and shall be construed under the laws of the State of California, other than the conflicts of law principles thereof.  The Maker agrees that the courts of the State of California and Federal District Courts located in Los Angeles County, California, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Note, regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or violation of any law.  The Maker irrevocably consents to the personal jurisdiction of such courts, to such venue, and to the service of process in the manner provided for the giving of notices in this Agreement.  The Maker waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

11.      <u>Loss of Note</u>.  If this Note is lost, stolen, or destroyed, upon the Maker's receipt of a reasonably satisfactory indemnification agreement executed by Lender, or if this Note is mutilated, upon Lender's surrender of the mutilated Note to the Maker, the Maker shall execute and deliver to Lender a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

000029

12.    Attorneys' Fees.  If any attorney is engaged by Lender to enforce or defend any provision of this Note (including in any bankruptcy proceeding), or as a consequence of any default, with or without the filing of any legal action or proceeding, then the Maker shall pay to Lender immediately upon demand all reasonable attorneys' fees and all costs incurred by Lender in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance owing hereunder as if such unpaid attorneys' fees and costs had been added to the principal.

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

MAKER

IPE HOLDINGS, LLC,
a Nevada limited liability company

By: _____
Name:  Alex Kang
Title:  Manager and Authorized Signatory

[SIGNATURE PAGE TO PROMISSORY NOTE]

- 4 -

000030

# EXHIBIT D

**No. 4**

## Infinite Prospects Entertainment  Holdings, LLC (IPE)

(A Nevada Limited Liability Company)

Amount: $500,000                                                    Las Vegas, Nevada
                                                                                        April 1, 2023

PROMISSORY NOTE

For value received, IPE HOLDINGS, LLC, a company organized under the laws of Nevada ("**Maker**"), promises to pay to the order of Kang Living Trust ("**Lender**"), the principal sum of Five Hundred Thousand United States Dollars (US$500,000) with simple interest on the outstanding principal amount at the rate of three percent (3%) per annum.  Interest shall commence with the date funds are actually received and shall continue on the outstanding principal until paid in full.  Interest shall be payable upon maturity.

1.        Payment.  Unless otherwise extended by the consent of the Maker and Lender, the outstanding principal amount and accrued and unpaid interest shall be due and payable on June 23, 2023 (the "**Maturity Date**").  This Note and the indebtedness evidenced hereby may be prepaid at the option of the Maker.  All payments of interest and principal shall be in lawful money of the United States of America at the principal office of Maker, or at such other place Lender may from time to time designate in writing to Maker.

2.        Default Rate of Interest.  From and after either (a) the occurrence of a default (whether or not Lender has elected to accelerate unpaid principal and interest under this Note as a result of such default); or (b) the maturity of this Note (whether the stated maturity date of this Note or the maturity date resulting from Lender's acceleration of unpaid principal and interest), then in either of such circumstances, interest on the unpaid principal balance of this Note shall accrue at a rate equal to three percent (3%) per annum above the otherwise applicable interest rate, but in no event shall such default rate exceed the maximum interest rate allowable by law.

3.        Events of Default.  Upon the occurrence of any of the following specified events (each an "**Event of Default**"), unless such Event of Default shall have been waived or cured prior to the exercise of the remedies set forth below:

(a)        Payments.  Any default by Maker in the payment when due of any principal and unpaid accrued interest under the Note;

(b)        Breach.  Maker's breach of any of the terms under this Note (other than payment) which remains unremedied for period of thirty (30) days after Lender provides Maker with written notice of such breach;

(c)        Institution of Bankruptcy Proceedings.  The institution by Maker of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to institution of bankruptcy or insolvency proceedings against it or the filing by it of a petition or answer or

**000031**

consent seeking reorganization or release under any bankruptcy act, or any other applicable federal or state law, or the consent by it to the filing of any such petition or the appointment of a receiver, liquidator, assignee, trustee, or other similar official, of Maker, or of any substantial part of Maker's property, or the making by Maker of an assignment for the benefit of creditors, or the taking of corporate action by Maker in furtherance of any such action;

(d)  Continuation of Bankruptcy Proceedings.  If, within sixty (60) days after the commencement of an action against Maker (and service of process in connection therewith on Maker) seeking any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such action shall not have been resolved in favor of Maker or all orders or proceedings thereunder affecting the operations or the business of Maker stayed, or if the stay of any such order or proceeding shall thereafter be set aside, or if, within sixty (60) days after the appointment without the consent or acquiescence of Maker of any trustee, receiver or liquidator of Maker or of all or any substantial part of the properties of Maker, such appointment shall not have been vacated; or

Then, and in any such event, and at any time thereafter, if any events shall be continuing, Lender shall have the option to declare the principal amount of the Note, and all accrued and unpaid interest thereon, to be immediately due and payable upon written notice to Maker.  Lender may exercise any and all rights and remedies which Lender may have under this Note and applicable law.

4.  Waiver.  Maker waives presentment, notice of nonperformance, protest, notice of protest, notice of dishonor, demand for payment and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of this Note; (b) waive the right to assert any statute of limitations as a defense to the enforcement of this Note to the fullest extent permitted by law; (c) consent to all extensions and renewals of the time of payment of this Note and to all modifications of this Note by Lender and Maker without notice to and without in any way affecting the liability of any person for payment of this Note; and (d) consent to any forbearance by Lender and to the release, addition, and substitution of any person liable for payment of this Note and of any or all of the security for this Note without notice to and without in any way affecting the liability of any person for payment of this Note.  No delay on the part of Lender in exercising any right hereunder shall operate as a waiver of such right under this Note.

5.  Cumulative Remedies.  Lender's rights and remedies under this Note are cumulative with and in addition to all other legal and equitable rights and remedies which Lender may have in connection with the Loan.

6.  Amendment.  Any term of this Note may be amended and the observance of any term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Lender.  No previous waiver and no failure or delay by Lender in acting with respect to the terms of this Note shall constitute a wavier of any breach, default or failure of a condition or covenant under this Note or the obligations secured thereby.

- 2 -

7.      <u>Assignment</u>.  This Note shall inure to the benefit of and bind the successors, permitted assigns, heirs, executors, and administrators of the parties hereto.  The Maker shall not assign this Note and any unconsented assignment shall be void *ab initio*.

8.      <u>Savings Clause</u>.  Maker and Lender intend to comply at all times with applicable usury laws.  If at any time such laws would render usurious any amounts due under this Note, then it is the Maker's and Lender's express intention that the Maker not be required to pay interest on this Note at a rate in excess of the maximum lawful rate, that the provisions of this paragraph shall control over all other provisions of this Note which may be in apparent conflict hereunder, that such excess amount shall be immediately credited to the principal balance of this Note (or, if this Note has been fully paid, refunded by Lender to the Maker), and the provisions hereof shall be immediately reformed and the amounts thereafter decreased, so as to comply with the then applicable usury law, but so as to permit the recovery of the fullest amount otherwise due under this Note.  Any such crediting or refund shall not cure or waive any default by the Maker under this Note.  The term "applicable law" as used in this Note shall mean the laws of the State of California as such laws now exist or may be changed or amended or come into effect in the future.

9.      <u>Notice</u>.  All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iii) two (2) days after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.  All communications shall be addressed to Lender at the last address furnished to the Maker by Lender in writing or, in the case of the Maker, at the principal offices of the Maker, or at such other address as any party or the Maker may designate by giving at least ten (10) days' advance written notice to all other parties.

10.     <u>Governing Law; Jurisdiction</u>.  This Note is made in accordance with and shall be construed under the laws of the State of California, other than the conflicts of law principles thereof.  The Maker agrees that the courts of the State of California and Federal District Courts located in Los Angeles County, California, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Note, regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or violation of any law.  The Maker irrevocably consents to the personal jurisdiction of such courts, to such venue, and to the service of process in the manner provided for the giving of notices in this Agreement.  The Maker waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

11.     <u>Loss of Note</u>.  If this Note is lost, stolen, or destroyed, upon the Maker's receipt of a reasonably satisfactory indemnification agreement executed by Lender, or if this Note is mutilated, upon Lender's surrender of the mutilated Note to the Maker, the Maker shall execute and deliver to Lender a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

- 3 -

12.     <u>Attorneys' Fees</u>.  If any attorney is engaged by Lender to enforce or defend any provision of this Note (including in any bankruptcy proceeding), or as a consequence of any default, with or without the filing of any legal action or proceeding, then the Maker shall pay to Lender immediately upon demand all reasonable attorneys' fees and all costs incurred by Lender in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance owing hereunder as if such unpaid attorneys' fees and costs had been added to the principal.

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

MAKER

IPE HOLDINGS, LLC,
a Nevada limited liability company

By: _____
Name:  Alex Kang
Title:  Manager and Authorized Signatory

[SIGNATURE PAGE TO PROMISSORY NOTE]

- 4 -

**000034**

# EXHIBIT E

**No. 5**

## Infinite Prospects Entertainment  Holdings, LLC (IPE)

(A Nevada Limited Liability Company)

Amount: $500,000 <span style="float:right">Las Vegas, Nevada<br>April 17, 2023</span>

PROMISSORY NOTE

For value received, IPE HOLDINGS, LLC, a company organized under the laws of Nevada ("**Maker**"), promises to pay to the order of Kang Living Trust ("**Lender**"), the principal sum of Five Hundred Thousand United States Dollars (US$500,000) with simple interest on the outstanding principal amount at the rate of three percent (3%) per annum.  Interest shall commence with the date funds are actually received and shall continue on the outstanding principal until paid in full.  Interest shall be payable upon maturity.

      1.      <u>Payment</u>.  Unless otherwise extended by the consent of the Maker and Lender, the outstanding principal amount and accrued and unpaid interest shall be due and payable on June 23, 2023 (the "**Maturity Date**").  This Note and the indebtedness evidenced hereby may be prepaid at the option of the Maker.  All payments of interest and principal shall be in lawful money of the United States of America at the principal office of Maker, or at such other place Lender may from time to time designate in writing to Maker.

      2.      <u>Default Rate of Interest</u>.  From and after either (a) the occurrence of a default (whether or not Lender has elected to accelerate unpaid principal and interest under this Note as a result of such default); or (b) the maturity of this Note (whether the stated maturity date of this Note or the maturity date resulting from Lender's acceleration of unpaid principal and interest), then in either of such circumstances, interest on the unpaid principal balance of this Note shall accrue at a rate equal to three percent (3%) per annum above the otherwise applicable interest rate, but in no event shall such default rate exceed the maximum interest rate allowable by law.

      3.      <u>Events of Default</u>.  Upon the occurrence of any of the following specified events (each an "**Event of Default**"), unless such Event of Default shall have been waived or cured prior to the exercise of the remedies set forth below:

      (a)      <u>Payments</u>.  Any default by Maker in the payment when due of any principal and unpaid accrued interest under the Note;

      (b)      <u>Breach</u>.  Maker's breach of any of the terms under this Note (other than payment) which remains unremedied for period of thirty (30) days after Lender provides Maker with written notice of such breach;

      (c)      <u>Institution of Bankruptcy Proceedings</u>.  The institution by Maker of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to institution of bankruptcy or insolvency proceedings against it or the filing by it of a petition or answer or

**000035**

consent seeking reorganization or release under any bankruptcy act, or any other applicable federal or state law, or the consent by it to the filing of any such petition or the appointment of a receiver, liquidator, assignee, trustee, or other similar official, of Maker, or of any substantial part of Maker's property, or the making by Maker of an assignment for the benefit of creditors, or the taking of corporate action by Maker in furtherance of any such action;

(d)    Continuation of Bankruptcy Proceedings.  If, within sixty (60) days after the commencement of an action against Maker (and service of process in connection therewith on Maker) seeking any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such action shall not have been resolved in favor of Maker or all orders or proceedings thereunder affecting the operations or the business of Maker stayed, or if the stay of any such order or proceeding shall thereafter be set aside, or if, within sixty (60) days after the appointment without the consent or acquiescence of Maker of any trustee, receiver or liquidator of Maker or of all or any substantial part of the properties of Maker, such appointment shall not have been vacated; or

Then, and in any such event, and at any time thereafter, if any events shall be continuing, Lender shall have the option to declare the principal amount of the Note, and all accrued and unpaid interest thereon, to be immediately due and payable upon written notice to Maker.  Lender may exercise any and all rights and remedies which Lender may have under this Note and applicable law.

4.    Waiver.  Maker waives presentment, notice of nonperformance, protest, notice of protest, notice of dishonor, demand for payment and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of this Note; (b) waive the right to assert any statute of limitations as a defense to the enforcement of this Note to the fullest extent permitted by law; (c) consent to all extensions and renewals of the time of payment of this Note and to all modifications of this Note by Lender and Maker without notice to and without in any way affecting the liability of any person for payment of this Note; and (d) consent to any forbearance by Lender and to the release, addition, and substitution of any person liable for payment of this Note and of any or all of the security for this Note without notice to and without in any way affecting the liability of any person for payment of this Note.  No delay on the part of Lender in exercising any right hereunder shall operate as a waiver of such right under this Note.

5.    Cumulative Remedies.  Lender's rights and remedies under this Note are cumulative with and in addition to all other legal and equitable rights and remedies which Lender may have in connection with the Loan.

6.    Amendment.  Any term of this Note may be amended and the observance of any term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Lender.  No previous waiver and no failure or delay by Lender in acting with respect to the terms of this Note shall constitute a wavier of any breach, default or failure of a condition or covenant under this Note or the obligations secured thereby.

000036

7.      Assignment.  This Note shall inure to the benefit of and bind the successors, permitted assigns, heirs, executors, and administrators of the parties hereto.  The Maker shall not assign this Note and any unconsented assignment shall be void *ab initio*.

8.      Savings Clause.  Maker and Lender intend to comply at all times with applicable usury laws.  If at any time such laws would render usurious any amounts due under this Note, then it is the Maker's and Lender's express intention that the Maker not be required to pay interest on this Note at a rate in excess of the maximum lawful rate, that the provisions of this paragraph shall control over all other provisions of this Note which may be in apparent conflict hereunder, that such excess amount shall be immediately credited to the principal balance of this Note (or, if this Note has been fully paid, refunded by Lender to the Maker), and the provisions hereof shall be immediately reformed and the amounts thereafter decreased, so as to comply with the then applicable usury law, but so as to permit the recovery of the fullest amount otherwise due under this Note.  Any such crediting or refund shall not cure or waive any default by the Maker under this Note.  The term "applicable law" as used in this Note shall mean the laws of the State of California as such laws now exist or may be changed or amended or come into effect in the future.

9.      Notice.  All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iii) two (2) days after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.  All communications shall be addressed to Lender at the last address furnished to the Maker by Lender in writing or, in the case of the Maker, at the principal offices of the Maker, or at such other address as any party or the Maker may designate by giving at least ten (10) days' advance written notice to all other parties.

10.      Governing Law; Jurisdiction.  This Note is made in accordance with and shall be construed under the laws of the State of California, other than the conflicts of law principles thereof.  The Maker agrees that the courts of the State of California and Federal District Courts located in Los Angeles County, California, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Note, regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or violation of any law.  The Maker irrevocably consents to the personal jurisdiction of such courts, to such venue, and to the service of process in the manner provided for the giving of notices in this Agreement.  The Maker waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

11.      Loss of Note.  If this Note is lost, stolen, or destroyed, upon the Maker's receipt of a reasonably satisfactory indemnification agreement executed by Lender, or if this Note is mutilated, upon Lender's surrender of the mutilated Note to the Maker, the Maker shall execute and deliver to Lender a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

- 3 -

**000037**

12.     Attorneys' Fees.  If any attorney is engaged by Lender to enforce or defend any provision of this Note (including in any bankruptcy proceeding), or as a consequence of any default, with or without the filing of any legal action or proceeding, then the Maker shall pay to Lender immediately upon demand all reasonable attorneys' fees and all costs incurred by Lender in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance owing hereunder as if such unpaid attorneys' fees and costs had been added to the principal.

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

MAKER

IPE HOLDINGS, LLC,
a Nevada limited liability company

By: _____

Name:  Alex Kang
Title:  Manager and Authorized Signatory

[SIGNATURE PAGE TO PROMISSORY NOTE]

- 4 -

000038

# EXHIBIT F

**No. 1**

# INFINITE PROSPECTS ENTERTAINMENT HOLDINGS, LLC
(A Nevada limited liability company)

Amount: $3,265,027.39

Las Vegas, Nevada
October 15, 2024

### AMENDED AND RESTATED PROMISSORY NOTE

WHEREAS, The Kang Living Trust ("**Lender**") previously issued to Infinite Prospects Entertainment Holdings, LLC ("**Maker**") (i) that certain Promissory Note dated November 15, 2022 in the original principal amount of $1,000,000, in favor of Holder; (ii) that certain Promissory Note dated March 1, 2023 in the original principal amount of $1,000,000, in favor of Holder; (iii) that certain Promissory Note dated March 27, 2023 in the original principal amount of $500,000, in favor of Holder; and (iv) that certain Promissory Note dated April 1, 2023 in the original principal amount of $500,000, in favor of Holder (collectively, the "**Prior Notes**");

WHEREAS, the Prior Notes have not been paid and are past their maturity date;

WHEREAS, the Prior Notes have incurred interest in the total amount of $265,027.39 through October 1, 2024; and

WHEREAS, the parties desire to amend and restate the Prior Notes to combine the Prior Notes, to extend the maturity dates of the Prior Notes and increase the interest rate.

For value received, Infinite Prospects Entertainment Holdings LLC, a company organized under the laws of Nevada ("**Maker**"), promises to pay to the order of the Kang Living Trust ("**Lender**"), the principal sum of Three Million Two Hundred Sixty Five Thousand Twenty Seven United States Dollars and 39/100 (US$3,265,027.39) with simple interest on the outstanding principal amount at the rate of ten percent (10%) per annum. Interest shall commence with the date funds are actually received and shall continue on the outstanding principal until paid in full. Interest shall be payable upon maturity.

1.      Payment. Unless otherwise extended by the consent of the Maker and Lender, the outstanding principal amount and accrued and unpaid interest shall be due and payable on September 30, 2025 (the "**Maturity Date**"). This Note and the indebtedness evidenced hereby may be prepaid at the option of the Maker. All payments of interest and principal shall be in lawful money of the United States of America at the principal office of Maker, or at such other place Lender may from time to time designate in writing to Maker.

2.      Default Rate of Interest. From and after either (a) the occurrence of a default (whether or not Lender has elected to accelerate unpaid principal and interest under this Note as a result of such default); or (b) the maturity of this Note (whether the stated maturity date of this Note or the maturity date resulting from Lender's acceleration of unpaid principal and interest), then in either of such circumstances, interest on the unpaid principal balance of this Note shall accrue at a rate equal to three percent (3%) per annum above the otherwise applicable interest rate, but in no event shall such default rate exceed the maximum interest rate allowable by law.

**000039**

3.    Events of Default.  Upon the occurrence of any of the following specified events (each an "**Event of Default**"), unless such Event of Default shall have been waived or cured prior to the exercise of the remedies set forth below:

(a)    Payments.  Any default by Maker in the payment when due of any principal and unpaid accrued interest under the Note;

(b)    Breach.  Maker's breach of any of the terms under this Note (other than payment) which remains unremedied for period of thirty (30) days after Lender provides Maker with written notice of such breach;

(c)    Institution of Bankruptcy Proceedings.  The institution by Maker of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to institution of bankruptcy or insolvency proceedings against it or the filing by it of a petition or answer or consent seeking reorganization or release under any bankruptcy act, or any other applicable federal or state law, or the consent by it to the filing of any such petition or the appointment of a receiver, liquidator, assignee, trustee, or other similar official, of Maker, or of any substantial part of Maker's property, or the making by Maker of an assignment for the benefit of creditors, or the taking of corporate action by Maker in furtherance of any such action;

(d)    Continuation of Bankruptcy Proceedings.  If, within sixty (60) days after the commencement of an action against Maker (and service of process in connection therewith on Maker) seeking any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such action shall not have been resolved in favor of Maker or all orders or proceedings thereunder affecting the operations or the business of Maker stayed, or if the stay of any such order or proceeding shall thereafter be set aside, or if, within sixty (60) days after the appointment without the consent or acquiescence of Maker of any trustee, receiver or liquidator of Maker or of all or any substantial part of the properties of Maker, such appointment shall not have been vacated; or

Then, and in any such event, and at any time thereafter, if any events shall be continuing, Lender shall have the option to declare the principal amount of the Note, and all accrued and unpaid interest thereon, to be immediately due and payable upon written notice to Maker.  Lender may exercise any and all rights and remedies which Lender may have under this Note and applicable law.

4.    Waiver.  Maker waives presentment, notice of nonperformance, protest, notice of protest, notice of dishonor, demand for payment and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of this Note; (b) waive the right to assert any statute of limitations as a defense to the enforcement of this Note to the fullest extent permitted by law; (c) consent to all extensions and renewals of the time of payment of this Note and to all modifications of this Note by Lender and Maker without notice to and without in any way affecting the liability of any person for payment of this Note; and (d) consent to any forbearance by Lender and to the release, addition, and substitution of any person liable for payment of this Note and of any or all of the security for this Note without notice to and without in any way affecting the liability of any person for payment of this Note.  No delay on the part of Lender in exercising any right hereunder shall operate as a waiver of such right under this Note.

000040

5.      Cumulative Remedies.   Lender's rights and remedies under this Note are cumulative with and in addition to all other legal and equitable rights and remedies which Lender may have in connection with the Loan.

6.      Amendment.  Any term of this Note may be amended and the observance of any term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Lender.  No previous waiver and no failure or delay by Lender in acting with respect to the terms of this Note shall constitute a wavier of any breach, default or failure of a condition or covenant under this Note or the obligations secured thereby.

7.      Assignment.  This Note shall inure to the benefit of and bind the successors, permitted assigns, heirs, executors, and administrators of the parties hereto.  The Maker shall not assign this Note and any unconsented assignment shall be void *ab initio*.

8.      Savings Clause.  Maker and Lender intend to comply at all times with applicable usury laws.  If at any time such laws would render usurious any amounts due under this Note, then it is the Maker's and Lender's express intention that the Maker not be required to pay interest on this Note at a rate in excess of the maximum lawful rate, that the provisions of this paragraph shall control over all other provisions of this Note which may be in apparent conflict hereunder, that such excess amount shall be immediately credited to the principal balance of this Note (or, if this Note has been fully paid, refunded by Lender to the Maker), and the provisions hereof shall be immediately reformed and the amounts thereafter decreased, so as to comply with the then applicable usury law, but so as to permit the recovery of the fullest amount otherwise due under this Note.  Any such crediting or refund shall not cure or waive any default by the Maker under this Note.  The term "applicable law" as used in this Note shall mean the laws of the State of California as such laws now exist or may be changed or amended or come into effect in the future.

9.      Notice.  All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iii) two (2) days after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.  All communications shall be addressed to Lender at the last address furnished to the Maker by Lender in writing or, in the case of the Maker, at the principal offices of the Maker, or at such other address as any party or the Maker may designate by giving at least ten (10) days' advance written notice to all other parties.

10.     Governing Law; Jurisdiction.  This Note is made in accordance with and shall be construed under the laws of the State of California, other than the conflicts of law principles thereof.  The Maker agrees that the courts of the State of California and Federal District Courts located in Los Angeles County, California, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Note, regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or

- 3 -

**000041**

violation of any law.  The Maker irrevocably consents to the personal jurisdiction of such courts, to such venue, and to the service of process in the manner provided for the giving of notices in this Agreement.  The Maker waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

11.      Loss of Note.  If this Note is lost, stolen, or destroyed, upon the Maker's receipt of a reasonably satisfactory indemnification agreement executed by Lender, or if this Note is mutilated, upon Lender's surrender of the mutilated Note to the Maker, the Maker shall execute and deliver to Lender a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

12.      Attorneys' Fees.  If any attorney is engaged by Lender to enforce or defend any provision of this Note (including in any bankruptcy proceeding), or as a consequence of any default, with or without the filing of any legal action or proceeding, then the Maker shall pay to Lender immediately upon demand all reasonable attorneys' fees and all costs incurred by Lender in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance owing hereunder as if such unpaid attorneys' fees and costs had been added to the principal.

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

MAKER

INFINITE PROPSECTS ENTERTAINMENT HOLDINGS, LLC,
a Nevada limited liability company

Verified by pdfFiller
10/15/2024

By: _____
Name:  Alex Kang
Title:  Manager and Authorized Signatory

000042

# EXHIBIT G

**GUARANTY**

THIS GUARANTY (this "*Guaranty*"), dated as of October __, 2024, is made by Alexander Kang ("*Guarantor*"), in favor and for the benefit of Kang Living Trust ("*Beneficiary*").

WHEREAS, reference is made to (i) that certain Promissory Note dated November 15, 2022 in the original principal amount of $1,000,000, made by Infinite Prospects Entertainment Holdings, LLC, a Nevada limited liability company ("*IPE*") in favor of Beneficiary; (ii) that certain Promissory Note dated March 1, 2023 in the original principal amount of $1,000,000, made by IPE in favor of Beneficiary; (iii) that certain Promissory Note dated March 27, 2023 in the original principal amount of $500,000, made by IPE in favor of Beneficiary; and (iv) that certain Promissory Note dated April 1, 2023 in the original principal amount of $500,000, made by IPE in favor of Beneficiary (collectively, the "*Prior Notes*" and each, a "*Prior Note*");

WHEREAS, the Prior Notes have not been repaid and are past their maturity date;

WHEREAS, Beneficiary has provided Guarantor an additional loan of $260,000 on January 30, 2024 which remains past due and outstanding (the "*Additional Loan*");

WHEREAS, simultaneously with the execution of this Guaranty the parties are amending and restating the Prior Notes to combine the Prior Notes, extend the maturity dates of the Prior Notes and to increase the interest rate (the "*Amended Note*").

WHEREAS, Beneficiary requires as a condition to the extension of the maturity dates of the Prior Notes, that Guarantor enter into this Guaranty pursuant to which Guarantor agrees to unconditionally guaranty for the benefit of Beneficiary the full and timely payment and performance of the Obligations (as hereinafter defined); and

WHEREAS, Guarantor expects to realize direct and indirect benefits as the result of forbearing from exercising Beneficiary's rights and remedies under the Amended Note.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby represents, warrants, covenants, agrees and guarantees as follows:

1.      <u>Guaranty</u>. Guarantor absolutely, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, to Beneficiary the full and punctual payment and performance of all present and future obligations, liabilities, covenants and agreements required to be observed and performed or paid or reimbursed by IPE under or relating to the Amended Note, when the same shall become due, whether at stated maturity, by acceleration, demand or otherwise plus all costs, expenses and fees (including the reasonable fees and expenses of Beneficiary's counsel) in any way relating to the enforcement or protection of Beneficiary's rights hereunder or thereunder (collectively, the "*Obligations*"). Upon failure of IPE to pay any of the Obligations when and as the same shall become due, Guarantor shall upon demand pay or cause to be paid, in cash, to Beneficiary an amount equal to the aggregate of the unpaid Obligations.

2.      <u>Guaranty Absolute and Unconditional</u>. Guarantor agrees that its Obligations under this Guaranty are independent, irrevocable, continuing, absolute and unconditional and shall not be discharged or impaired or otherwise affected by, and Guarantor hereby irrevocably waives any defenses to enforcement it may have (now or in the future) by reason of:

(a)      any illegality, invalidity or unenforceability of any Obligation, the Amended Note or any related agreement or instrument, or any law, regulation, decree or order of any jurisdiction or any other event affecting any term of the Obligations;

(b)      any change in the time, place or manner of payment or performance of, or in any other term of the Obligations, any renewal, extension or acceleration of the Obligations, or any rescission, waiver, release, assignment, amendment or other modification of the Amended Note;

(c)      any taking, exchange, substitution, release, impairment, amendment, waiver, modification or non-perfection of any collateral or any other guaranty for the Obligations, or any manner of sale, disposition or application of proceeds of any collateral or other assets to all or part of the Obligations;

(d)      any default, failure or delay, willful or otherwise, in the performance of the Obligations;

(e)      any change, restructuring or termination of the corporate structure, ownership or existence of Guarantor or IPE or any insolvency, bankruptcy, reorganization or other similar proceeding affecting IPE or its assets or any resulting restructuring, release or discharge of any Obligations;

(f)      any failure of Beneficiary to disclose to Guarantor any information relating to the business, condition (financial or otherwise), operations, performance, properties or prospects of IPE now or hereafter known to Beneficiary, Guarantor waiving any duty of Beneficiary to disclose such information;

(g)      the failure of any other guarantor or third party to execute or deliver this Guaranty or any other guaranty or agreement, or the release or reduction of liability of Guarantor or any other guarantor or surety with respect to the Obligations;

(h)      the acceptance of other guaranties of the Obligations and taking and holding of security for payment of the Obligations;

(i)      the failure of Beneficiary to assert any claim or demand or to exercise or enforce any right or remedy under the provisions of the Amended Note or otherwise;

(j)      the existence of any claim, set-off, counterclaim, recoupment or other rights that Guarantor or IPE may have against Beneficiary (other than a defense of payment or performance); and

(k)      any other circumstance (including, without limitation, any statute of limitations), act, omission or manner of administering the Amended Note, or any existence of or reliance on any representation by Beneficiary that might vary the risk of Guarantor or otherwise operate as a defense available to, or a legal or equitable discharge of, Guarantor.

3.      <u>Certain Waivers; Acknowledgments</u>. Guarantor further acknowledges and agrees as follows:

(a)      Guarantor hereby unconditionally and irrevocably waives any right to revoke this Guaranty and acknowledges that this Guaranty is continuing in nature and applies to all presently existing and future Obligations, until the complete, irrevocable and indefeasible payment and satisfaction in full of the Obligations.

**000044**

(b)      This Guaranty is a guaranty of payment and performance and not of collection. Beneficiary shall not be obligated to enforce or exhaust its remedies against IPE or under the Amended Note, before proceeding to enforce this Guaranty.

(c)      This Guaranty is a direct guaranty and independent of the obligations of IPE under the Amended Note. Beneficiary may resort to Guarantor for payment and performance of the Obligations whether or not Beneficiary shall have resorted to any collateral therefor or shall have proceeded against IPE or any other guarantors with respect to the Obligations. Beneficiary may, at Beneficiary's option, proceed against Guarantor and IPE, jointly and severally, or against Guarantor only without having obtained a judgment against IPE.

(d)      Guarantor hereby unconditionally and irrevocably waives promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Beneficiary protect, secure, perfect or insure any lien or any property subject thereto.

(e)      Guarantor agrees that its guaranty hereunder shall continue to be effective or be reinstated, as the case may be, if at any time all or part of any payment of any Obligation is voided, rescinded or recovered or must otherwise be returned by Beneficiary upon the insolvency, bankruptcy or reorganization of IPE.

(f)      Guarantor agrees that Beneficiary is not required to pursue any other remedy in power of Beneficiary.

(g)      Guarantor waives any defense arising by reason of incapacity, lack of authority or any disability or other defense of IPE including, without limitation, any defense based on or arising out of the lack of validity or the unenforceability of the Obligations or the Amended. Note or any agreement or instrument relating thereto.

(h)      Guarantor waives (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty and any legal or equitable discharge of such Guarantor's obligations hereunder, (ii) the benefit of any statute of limitations affecting such Guarantor's liability hereunder or the enforcement thereof, (iii) promptness, diligence and any requirement that Beneficiary protect, secure, perfect or insure any security interest or lien or any property subject thereto, or (iv) any defense based upon Beneficiary's errors or omissions in the administration of the Obligations, except behavior which amounts to bad faith.

(i)      Guarantor's payment of a portion, but not all, of the Obligations shall in no way limit, affect, modify or abridge such Guarantor's liability for any Obligations that have not been paid.

4.      <u>Subrogation</u>. Guarantor waives and shall not exercise any rights that it may acquire by way of subrogation, contribution, reimbursement or indemnification for payments made under this Guaranty until all Obligations shall have been indefeasibly paid and discharged in full.

5.      <u>Representations and Warranties</u>. Guarantor represents and warrants that: (a) this Guaranty constitutes Guarantor's valid and legally binding agreement in accordance with its terms; (b) the execution, delivery and performance of this Guaranty will not violate any agreement, contract, instrument, order, judgment or decree to which Guarantor or any of its assets may be subject, and (c) Guarantor is a natural person and is competent and has requisite power and authority to enter into this Guaranty and to consummate the transactions contemplated herein.

6.        Notices. All notices, requests, and communications required or permitted to be delivered hereunder shall be in writing and delivered to all persons at the addresses below, by one of the following methods: (a) hand delivery, whereby delivery is deemed to have occurred at the time of delivery; (b) a nationally or regionally recognized overnight courier company, whereby delivery is deemed to have occurred the business day following deposit with the courier; (c) registered United States mail, signature required and postage-prepaid, whereby delivery is deemed to have occurred on the third business day following deposit with the United States Postal Service; or (d) electronic transmission (email) provided that the transmission is completed no later than 5:00 p.m. on a business day.

|  |  |
|---|---|
| If to Guarantor: | Alexander Kang<br>8813 Bonta Court<br>Las Vegas, NV 89134<br>alexkang@infiniteprospectsent.com |
| If to Beneficiary: | Kang Living Trust<br>Attn:    Daniel Kang<br>141 E 16th Street<br>Costa Mesa, CA 92627<br>dan.k@berify.io |

Any party may change its address for purposes of this Section 6 by giving written notice as provided in this Section 6. All notices and demands delivered by a party's attorney on a party's behalf shall be deemed to have been delivered by said party. Notices shall be valid only if served in the manner provided in this Section 6.

7.        Assignment. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; *provided*, *however*, that Guarantor may not, without the prior written consent of Beneficiary, assign any of its rights, powers or obligations hereunder. Beneficiary may assign this Guaranty and its rights hereunder without the consent of Guarantor. Any attempted assignment in violation of this Section 7 shall be null and void.

8.        Governing Law; Service of Process. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF NEVADA, WITHOUT REFERENCE TO ANY CHOICE OF LAW DOCTRINE. EACH PARTY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN SECTION 6 HEREOF AND AGREES THAT NOTHING HEREIN SHALL AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE PROCESS IN ANY MANNER PERMITTED BY APPLICABLE LAW.

9.        Waiver of Jury Trial. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OF THE OBLIGATIONS HEREUNDER.

10.        Cumulative Rights. Each right, remedy and power hereby granted to Beneficiary or allowed it by applicable law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by Beneficiary at any time or from time to time.

11.        Severability. If any provision of this Guaranty is to any extent determined by final decision of a court of competent jurisdiction to be unenforceable, the remainder of this Guaranty shall not be affected thereby, and each provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

12.     <u>Entire Agreement; Amendments; Headings; Effectiveness</u>. This Guaranty and the Amended Note constitute the sole and entire agreement of Guarantor and Beneficiary with respect to the subject matter hereof and supersedes all previous agreements or understandings, oral or written, with respect to such subject matter. No amendment or waiver of any provision of this Guaranty shall be valid and binding unless it is in writing and signed, in the case of an amendment, by both parties, or in the case of a waiver, by the party against which the waiver is to be effective. Section headings are for convenience of reference only and shall not define, modify, expand or limit any of the terms of this Guaranty. Delivery of this Guaranty by facsimile or in electronic (*i.e.*, pdf or tif) format shall be effective as delivery of a manually executed original of this Guaranty.

[*Signature Page Follows*]

000047

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written.

**GUARANTOR**:

ALEXANDER KANG

*alexkang*

Verified by pdfFiller
10/15/2024

**000048**

# EXHIBIT H

**No. 1**

## ALEXANDER KANG

Amount: $260,000                                                            Las Vegas, Nevada
                                                                          October ____, 2024

### PROMISSORY NOTE

WHEREAS, The Kang Living Trust provided Alexander Kang a loan of $260,000 on January 11, 2024; and

WHEREAS, the parties now desire to memorialize the loan in writing.

For value received, Alexander Kang ("**Maker**"), promises to pay to the order of The Kang Living Trust ("**Lender**"), the principal sum of Two Hundred Sixty Thousand United States Dollars (US$260,000) with simple interest on the outstanding principal amount at the rate of ten percent (10%) per annum.  Interest shall commence with the date funds were actually received and shall continue on the outstanding principal until paid in full.  Interest shall be payable upon maturity.

1.      Payment.  Unless otherwise extended by the consent of the Maker and Lender, the outstanding principal amount and accrued and unpaid interest shall be due and payable on January 30, 2025 (the "**Maturity Date**").  This Note and the indebtedness evidenced hereby may be prepaid at the option of the Maker.  All payments of interest and principal shall be in lawful money of the United States of America at the principal office of Maker, or at such other place Lender may from time to time designate in writing to Maker.

2.      Default Rate of Interest.  From and after either (a) the occurrence of a default (whether or not Lender has elected to accelerate unpaid principal and interest under this Note as a result of such default); or (b) the maturity of this Note (whether the stated maturity date of this Note or the maturity date resulting from Lender's acceleration of unpaid principal and interest), then in either of such circumstances, interest on the unpaid principal balance of this Note shall accrue at a rate equal to three percent (3%) per annum above the otherwise applicable interest rate, but in no event shall such default rate exceed the maximum interest rate allowable by law.

3.      Events of Default.  Upon the occurrence of any of the following specified events (each an "**Event of Default**"), unless such Event of Default shall have been waived or cured prior to the exercise of the remedies set forth below:

(a)      Payments.  Any default by Maker in the payment when due of any principal and unpaid accrued interest under the Note;

(b)      Breach.  Maker's breach of any of the terms under this Note (other than payment) which remains unremedied for period of thirty (30) days after Lender provides Maker with written notice of such breach;

**000049**

(c)    Institution of Bankruptcy Proceedings.   The institution by Maker of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to institution of bankruptcy or insolvency proceedings against it or the filing by it of a petition or answer or consent seeking reorganization or release under any bankruptcy act, or any other applicable federal or state law, or the consent by it to the filing of any such petition or the appointment of a receiver, liquidator, assignee, trustee, or other similar official, of Maker, or of any substantial part of Maker's property, or the making by Maker of an assignment for the benefit of creditors, or the taking of corporate action by Maker in furtherance of any such action;

(d)    Continuation of Bankruptcy Proceedings.   If, within sixty (60) days after the commencement of an action against Maker (and service of process in connection therewith on Maker) seeking any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such action shall not have been resolved in favor of Maker or all orders or proceedings thereunder affecting the operations or the business of Maker stayed, or if the stay of any such order or proceeding shall thereafter be set aside, or if, within sixty (60) days after the appointment without the consent or acquiescence of Maker of any trustee, receiver or liquidator of Maker or of all or any substantial part of the properties of Maker, such appointment shall not have been vacated; or

Then, and in any such event, and at any time thereafter, if any events shall be continuing, Lender shall have the option to declare the principal amount of the Note, and all accrued and unpaid interest thereon, to be immediately due and payable upon written notice to Maker.  Lender may exercise any and all rights and remedies which Lender may have under this Note and applicable law.

4.    Waiver.  Maker waives presentment, notice of nonperformance, protest, notice of protest, notice of dishonor, demand for payment and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of this Note; (b) waive the right to assert any statute of limitations as a defense to the enforcement of this Note to the fullest extent permitted by law; (c) consent to all extensions and renewals of the time of payment of this Note and to all modifications of this Note by Lender and Maker without notice to and without in any way affecting the liability of any person for payment of this Note; and (d) consent to any forbearance by Lender and to the release, addition, and substitution of any person liable for payment of this Note and of any or all of the security for this Note without notice to and without in any way affecting the liability of any person for payment of this Note.  No delay on the part of Lender in exercising any right hereunder shall operate as a waiver of such right under this Note.

5.    Cumulative Remedies.   Lender's rights and remedies under this Note are cumulative with and in addition to all other legal and equitable rights and remedies which Lender may have in connection with the Loan.

6.    Amendment.  Any term of this Note may be amended and the observance of any term of this Note may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Maker and the Lender.  No previous waiver and no failure or delay by Lender in acting with respect to the terms of this Note shall constitute a wavier of any breach, default or failure of a condition or covenant under this Note or the obligations secured thereby.

- 2 -

7.        Assignment.   This Note shall inure to the benefit of and bind the successors, permitted assigns, heirs, executors, and administrators of the parties hereto.  The Maker shall not assign this Note and any unconsented assignment shall be void *ab initio*.

8.        Savings Clause.  Maker and Lender intend to comply at all times with applicable usury laws.  If at any time such laws would render usurious any amounts due under this Note, then it is the Maker's and Lender's express intention that the Maker not be required to pay interest on this Note at a rate in excess of the maximum lawful rate, that the provisions of this paragraph shall control over all other provisions of this Note which may be in apparent conflict hereunder, that such excess amount shall be immediately credited to the principal balance of this Note (or, if this Note has been fully paid, refunded by Lender to the Maker), and the provisions hereof shall be immediately reformed and the amounts thereafter decreased, so as to comply with the then applicable usury law, but so as to permit the recovery of the fullest amount otherwise due under this Note.  Any such crediting or refund shall not cure or waive any default by the Maker under this Note.  The term "applicable law" as used in this Note shall mean the laws of the State of California as such laws now exist or may be changed or amended or come into effect in the future.

9.        Notice.  All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iii) two (2) days after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.  All communications shall be addressed to Lender at the last address furnished to the Maker by Lender in writing or, in the case of the Maker, at the principal offices of the Maker, or at such other address as any party or the Maker may designate by giving at least ten (10) days' advance written notice to all other parties.

10.        Governing Law; Jurisdiction.  This Note is made in accordance with and shall be construed under the laws of the State of California, other than the conflicts of law principles thereof.  The Maker agrees that the courts of the State of California and Federal District Courts located in Los Angeles County, California, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Note, regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or violation of any law.  The Maker irrevocably consents to the personal jurisdiction of such courts, to such venue, and to the service of process in the manner provided for the giving of notices in this Agreement.  The Maker waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

11.        Loss of Note.  If this Note is lost, stolen, or destroyed, upon the Maker's receipt of a reasonably satisfactory indemnification agreement executed by Lender, or if this Note is mutilated, upon Lender's surrender of the mutilated Note to the Maker, the Maker shall execute and deliver to Lender a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

**000051**

12.     <u>Attorneys' Fees</u>.  If any attorney is engaged by Lender to enforce or defend any provision of this Note (including in any bankruptcy proceeding), or as a consequence of any default, with or without the filing of any legal action or proceeding, then the Maker shall pay to Lender immediately upon demand all reasonable attorneys' fees and all costs incurred by Lender in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance owing hereunder as if such unpaid attorneys' fees and costs had been added to the principal.

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

MAKER

ALEXANDER KANG

Verified by pdfFiller
10/15/2024

By: _____*alexkang*_____

[SIGNATURE PAGE TO PROMISSORY NOTE]

- 4 -

000052